# **ENTRY ORDER**

SUPREME COURT CASE NO. 26-AP-222

JUNE TERM, 2026

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| | } | |
| Mark Sterling | } | CASE NO. 26-CR-05593 |

Trial Judge: Timothy C. Doherty, Jr.

In the above-entitled cause, the Clerk will enter:

Defendant Mark Sterling appeals from a superior court order holding him without bail pending trial, pursuant to 13 V.S.A. § 7553a. He argues that the offense for which the State is seeking to hold him without bail ("HWOB"), aggravated stalking while in possession of a deadly weapon pursuant to 13 V.S.A. § 1063(a)(5), does not contain an element involving an act of violence against another; that the State has not established that the evidence of his guilt is "great"; and that the State cannot establish by clear and convincing evidence that he poses a danger to the public or the complaining witness that cannot be managed through the imposition of conditions of release. Alternatively, Defendant contends that the statutory scheme is unconstitutionally vague. We reverse and remand.

On June 3, 2026, the State charged defendant with one count of aggravated stalking while possessing a deadly weapon under 13 V.S.A. § 1063(5). Additionally, he was charged with violation of an abuse prevention order, aggravated stalking in violation of a court order, unlawful possession of a firearm, and aggravated operation of a motor vehicle without the owner's consent. The State moved to hold defendant without bail under § 7553a on the basis of the aggravated-stalking-with-a-deadly-weapon charge.[1] The trial court held a hearing on the State's motion and determined to hold defendant without bail. Defendant timely requested a new evidentiary hearing before this Court. See 13 V.S.A. § 7556(d) ("A person held without bail under section 7553a of this title prior to trial shall be entitled to an independent, second evidentiary hearing on the merits of the denial of bail, which shall be a hearing de novo by a single Justice of the Supreme Court forthwith"); V.R.A.P. 9(b) (outlining procedures for review of denial of release under 13 V.S.A. § 7553a).

---

[1] Under such circumstances, Chapter II, § 40(3) of the Vermont Constitution and 13 V.S.A. § 7553b also require that a defendant's case proceed to trial within sixty days, absent agreement to a greater period of time by a defendant or other delay attributable to him or her.

This Court held a hearing on the appeal on July 2, 2026. It makes the following determinations.

## I. The Evidence Presented

At the July 2 hearing, the parties stipulated to the admission of the transcript from the initial hold-without-bail-hearing, which was held on June 8 and 15, 2026, and the admission of Exhibits 1 through 3 from that hearing. The Court makes the findings set out below from that evidence.[2]

The complaining witness in this matter, B.S., sought and obtained a temporary and a final relief-from-abuse-order against defendant in May 2026. The parties are former spouses. Defendant did not appear at the relief from abuse hearing, and the final order issued by default. The orders precluded defendant from contacting B.S. and from being within 300 feet of her or her residence, which was also his former home. It also required that he surrender all firearms to law enforcement. Defendant was properly served with the orders.

At the time the relief from abuse orders issued, defendant was homeless. On or about June 2, 2026, he stole a dump truck and proceeded to B.S's residence. He parked the vehicle on the road, went up to the door, and knocked. B.S. came to the door. Defendant inquired as to whether his mail was still at the house. He focused on a credit card that he needed and that he believed had been delivered to the home. B.S. told defendant that his mail had been returned the Post Office. She offered to check her car to ensure no mail was there and did so without incident. No physical contact or threats occurred between the two. B.S. credibly stated that defendant was non-confrontational during the incident. Defendant left. At the time of this event, defendant had a backpack that contained a long-handled knife and a handgun. The knapsack remained in the dump truck parked on the road during the encounter.

B.S. left for work but turned on her surveillance cameras. She had a coworker watch the cameras for a period of time. At a later point in the day, defendant returned to the house and parked in the driveway. He entered the home. He would later tell law enforcement that he had been to the Post Office, and his mail was not there. He stated that he entered the residence in search of his mail. He then left the house. B.S. was not present at the property during this second visit. The backpack containing the weapons remained in the dump truck in the driveway during this event. B.S. stated that defendant did not disturb anything in the home or steal anything. She believed he was desperate to find his mail and credit card.

---

[2] In State v. Madison, 163 Vt. 360, 372 (1995), this Court concluded that "review de novo" under the Constitution and 13 V.S.A. § 7556 did not automatically entitle a defendant to a second evidentiary hearing regarding hold-without-bail orders under § 7553a but that additional evidence could be heard based on a showing of "good cause." Vermont Rule of Appellate Procedure 9(b) was adopted to mirror that interpretation. V.R.A.P. 9(b)(1)(E). The Legislature later amended the law to state that defendants were entitled to a full, de novo evidentiary hearing before a single justice under such circumstances. 13 V.S.A. §§ 7555a(8)-(9), 7556(d). The language of V.R.A.P. 9(b) was not changed. Here, the parties agreed on the admission of the transcript of the initial hearing and to the admission of all exhibits. As a result, this Court has no present occasion to seek to harmonize or prioritize the directives of § 7556(d) and V.R.A.P. 9(b).

The State's basis for pursuing the instant charge is its assertion that, by returning to the residence twice in violation of the abuse prevention order, defendant interfered with B.S.'s property. The State maintains that those two visits establish a "course of conduct" under Vermont law, 13 V.S.A. § 1061(1)(A), and that defendant knew or should have known it would cause a reasonable person in B.S.'s position to suffer substantial emotional distress. See 13 V.S.A. § 1061(4) (defining "stalk[ing]" as "engag[ing] purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person . . . substantial emotional distress"). The State also asserts that defendant possessed a deadly weapon by having a gun and a knife in his backpack during the two trips to the residence. See id. § 1063(a)(5) ("A person commits the crime of aggravated stalking if the person intentionally stalks another person, and . . . had a deadly weapon . . . in his or her possession while engaged in the act of stalking.").

The State offered the sworn and recorded statement of B.S. to support its request to HWOB. She averred that, while the parties had separated in 2025, defendant was at B.S.'s home from time to time and assisted with the parties' children. In February 2026, he began acting oddly and out of character. B.S. attributed this to escalating mental health issues and a renewed consumption of alcohol. Defendant then lost his job, and his residence, rendering him homeless. He came to B.S.'s home off and on for assistance and support, which B.S. provided. During some of these visits he became angry and swore at B.S. and said she had lied to him about certain events. B.S. became concerned about defendant's potential suicidality for a number of reasons, including that defendant stated during a drive that he wanted to jump out of a moving car and was also seen walking down the middle of a busy street. Additionally, B.S. became concerned for her own safety after defendant's erratic behavior. She installed surveillance cameras and changed the locks on her home.

The State offered no evidence establishing a history of physical harm or threats of violence by defendant towards B.S. B.S. stated that defendant had never tried to harm her or their children. Defendant has no record of criminal convictions and no failures to appear for criminal court proceedings. He has additional pending charges for unrelated misdemeanors. Although he did not appear for his arraignment on those charges, the State concedes that he was in the hospital at the time of that proceeding. During the month leading up to the instant charges, it appears that defendant was in the hospital voluntarily multiple times for mental health reasons, but it is unclear whether he was ever evaluated during those visits.

Defendant is currently being held without bail. If he were not incarcerated, defendant would be homeless. Defendant has been in custody since early June. The State offered no evidence that defendant has engaged in misconduct, assaultive or threatening behavior, or incurred any disciplinary violations since coming into custody.

## II. Analysis

The State has asked the Court to hold defendant without bail under 13 V.S.A. § 7553a based on the charge of aggravated stalking with a deadly weapon. Under Chapter II, § 40(2) of the Vermont Constitution and § 7553a, the State's request involves a multi-step analysis. First, the charge lodged against defendant must be "a felony, an element of which involves an act of violence against another person," as that phrase is used in § 7553a and the identical Constitutional

3

provision on which it is based. 13 V.S.A. § 7553a(a); Vt. Const. ch. II, § 40(2). Second, the evidence of guilt as to that offense must be great. 13 V.S.A. § 7553a(a); Vt. Const. ch. II, § 40(2). Third, the State must establish both that "the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence." 13 V.S.A. § 7553a(a); Vt. Const. ch. II, § 40(2). Finally, despite those findings, a court must consider whether to exercise discretion to release defendant in light of the factors in 13 V.S.A. § 7554 or other considerations. State v. White, 2020 VT 62, ¶ 10, 212 Vt. 658 (mem.) (explaining that courts have "narrow" discretion under such circumstances).

Here, the Court will address only the first and third prongs of the analysis as those are dispositive of the appeal. Similarly, in light of the Court's disposition, it also need not reach defendant's argument that the statutory scheme is unconstitutionally vague.

### A. Felony Involving an Act of Violence

The State maintains that the charged offense, aggravated stalking under § 1063(a)—and particularly § 1063(a)(5)—is a felony an element of which involves an act of violence. Defendant disagrees.

In the Court's view, this question is largely resolved and controlled by the Court's prior ruling in State v. Beldiman, No. 25-AP-211, 2025 WL 1993825 (Vt. July 16, 2025) (unpub. mem.), https://www.vermontjudiciary.org/media/19213. There, a single justice concluded that the crime of aggravated stalking was not a felony that involves an act of violence. Id. at *7. The Court reviewed earlier decisions, including State v. Perron, No. 24-AP-163, 2024 WL 3416096 (Vt. July 12, 2024) (unpub. mem.), https://www.vermontjudiciary.org/media/18069, and determined that, even using the broad definition of "violence" defined therein, aggravated stalking would not suffice. Beldiman, 2025 WL 1993825, at *6-7. Key aspects of the ruling focused on the fact that the crime of aggravated stalking can be established by a defendant engaging in a course of conduct that solely interferes with property and that the mens rea of the crime could be satisfied by proof that a defendant "knew or reasonably should have known" that such interference would cause a reasonable person to suffer substantial emotional distress. Id. The Court concluded that those aspects of the crime precluded a finding that the elements of aggravated stalking required there to have been the type of " 'abusive or unjust use of power' " towards another person identified by Perron as a basis for finding an act of violence. Id. (quoting Perron, 2024 WL 3416096, at *4, 6) (noting that the negligence standard established by the stalking statute "is a considerably lesser standard than other situations where the Court has found attempts or threats sufficient to constitute acts of violence"); c.f. Counterman v. Colorado, 600 U.S. 66, 79–80 (2023) (finding negligence standard insufficient to provide adequate protection of First Amendment interests in stalking case involving threats made by defendant).

Despite the State's protests, this Court's later decision in State v. Shores, 2025 VT 62, __ Vt. __ , does not hold otherwise and does not undermine the determination in Beldiman. First, Shores approved of the standard enunciated in Perron and Madison, which were precedents relied upon by Beldiman. Compare Shores, 2025 VT 62, ¶¶ 14, 19 (citing Perron, 2024 WL 3416096, at *4-5, and Madison, 163 Vt. at 395, for definition of "violence" for purposes of Chapter II, § 40(2) of Vermont Constitution and 13 V.S.A. § 7553a), with Beldiman, 2025 WL 1993825, at *6-7

(citing same definitions). Second, despite overruling, a separate case, State v. Madigan, No. 2011-103, 2011 WL 4974812 (Vt. Mar. 25, 2011) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo11-103.bail.pdf, Shores did not overrule the holding of Beldiman or indicate that its ruling was suspect. Third, Shores confirmed one of Beldiman's primary holdings—that a legislative direction that a crime be interpreted to be an act of violence is "instructive and persuasive, but not determinative" of whether a crime meets the constitutional definition of an act of violence. Shores, 2025 VT 62, ¶¶ 8, 31, 31 n.5. Fourth, Shores also underscored that determining whether the elements of a crime require an act of violence can involve an examination of the linkage between the conduct and the mental state needed to support the crime. Id. ¶ 28 ("This forceful exploitation and violation of a child's freedom with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child, § 2602(a)(1), is as an abusive and unjust use of power over a child and thus fits squarely within the definition of violence employed by this Court." (emphasis added) (quotation omitted)).

The State's additional contention that the instant matter is not controlled by Beldiman because Beldiman was decided under 13 V.S.A. § 1063(a)(1), whereas the charge brought here, pursuant to 13 V.S.A. § 1063(a)(5), requires that the defendant possess a deadly weapon, is not persuasive. It is true that the instant crime requires proof that the defendant possessed a weapon while the stalking behavior occurred. See 13 V.S.A. § 1063(a)(5) ("A person commits the crime of aggravated stalking if the person intentionally stalks another person, and . . . had a deadly weapon . . . in his or her possession while engaged in the act of stalking."). The portions of the crime that this Court found troubling in Beldiman, however—that a conviction may be had based solely on interferences with property that a defendant "should have known" would cause harm—remain elements of the crime charged in this case, and the Beldiman reasoning that these elements do not amount to "violence" continues to apply. As a result, the additional requirement that a weapon be present is insufficient to take this matter out of the governing shadow of Beldiman.[3]

---

[3] No doubt, as Beldiman acknowledges, many possible factual scenarios that may fall within the crime of aggravated stalking would unquestionably involve acts of violence. The Court, however, must consider the essential elements of the crime and the outer ambits of the statutory language. See State v. Bulson, 2024 VT 15, ¶ 10, 219 Vt. 631 (mem.) (analyzing statute's plain language to determine whether any of crime's elements involve act of violence). The proper inquiry is the statutory elements of the crime that the State must prove "and not the evidence that will be offered to prove the felony." State v. Filippo, 172 Vt. 551, 532 (2001) (mem.). Here, for example, the statutory elements could proscribe conduct by a defendant who interferes with a website or a sign erected on a vacant lot honoring a person's late best friend where the defendant should have known those actions would cause a reasonable person substantial emotional distress. Consistent with Beldiman, such conduct does not fall within the constitutional understanding of a violent act under Chapter II, § 40(2).

In the end, Beldiman controls: aggravated stalking is not a felony crime, "an element of which involves an act of violence." Vt. Const. ch. II, § 40(2); 13 V.S.A. § 7553a(a).[4] Under State v. Downing, 2020 VT 97, ¶¶ 35-36, 213 Vt. 643 (mem.), this Court is bound to follow that ruling.[5]

### B. Clear and Convincing Evidence of Danger to Others and Inability of Conditions of Release to Control

Even if there were some daylight between Beldiman and this case, the State's request to HWOB would fail on the evidence presented. Holding a defendant without bail is an exception to Vermont's "usual presumption in favor of [pretrial] release." State v. Auclair, 2020 VT 26, ¶ 23, 211 Vt. 651. To hold an individual under § 7553a and the Vermont Constitution, the State must establish by clear and convincing evidence both "that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release

---

[4] That is not to say that the State's arguments against the outcome in Beldiman are insubstantial. They are not. Beldiman relied, in part, on Madigan, which was overruled by Shores. See Beldiman, 2025 WL 1993825, at *4 (citing Madigan); Shores, 2025 VT 62, ¶ 27 (overruling Madigan). Additionally, the fact that the Legislature enacted the crime of aggravated stalking around the same time as it adopted § 7553a and Chapter II, § 40(2) of the Vermont Constitution is also worthy of consideration. See 1993, No. 95, § 1 (codifying 13 V.S.A. § 1063 in 1993 with instruction that it be considered a violent act for bail purposes); 13 V.S.A. § 7555a(1) (explaining "[d]uring the 1991-2 and the 1993-4 sessions, the General Assembly adopted Proposal 7, which proposed to amend section 40 of Chapter II of the Vermont Constitution to allow a judge to order a person charged with a felony involving an act of violence to be held without bail" when certain conditions are met); 1993, , No. 143 (Adj. Sess.), § 2 (codifying 13 V.S.A. § 7553a in 1994).

There are powerful countervailing points as well, however. Though citing Madigan, Beldiman ultimately applied Perron and Madison, which are the same cases that informed the Shores ruling. Beldiman, 2025 WL 1993825, at *6. Further, the original crime of aggravated stalking did not allow a conviction based on proof that the defendant "should have known" her actions would cause harm to a reasonable person. Compare 13 V.S.A. § 1061(defining current crime of stalking to require proof that "person engaging in the conduct knows or should know would cause a reasonable person to fear for his or her safety or the safety of another or would cause a reasonable person substantial emotional distress") with 1993, No. 95 § 1 (defining stalking in 1993 to require proof that defendant "causes the person to fear for his or her physical safety or causes the person substantial emotional distress."). That mens rea provision—a controlling component of the Beldiman ruling—was added in 2005. See State v. Van Aelstyn, 2007 VT 6, ¶ 17, 181 Vt. 274. Likewise, the provision that establishes aggravated stalking based on possession of a weapon, 13 V.S.A. § 1063(a)(5), was not part of the crime in 1993 but was added by the Legislature in 2005. 2005, No. 83, § 5.

[5] Downing specifically discussed the precedential effect of published decisions of single justices. 2020 VT 97, ¶ 35-36. The Court, however, does not believe Beldiman's unpublished status diminishes its force under Downing. Indeed, the Shores Court went to great lengths to examine another unpublished opinion, Madigan, 2011 WL 4974812, prior to overruling it. Shores, 2025 VT 62, ¶¶ 17-21, 27.

6

will reasonably prevent the physical violence." Vt. Const. ch. II, § 40(2) (emphasis added); 13 V.S.A. § 7553a (emphasis added). This is an exacting standard.

As this Court has noted, proof by clear and convincing evidence requires:

> somewhat less than evidence beyond a reasonable doubt, but more than a preponderance of the evidence. The clear and convincing standard does not require that evidence in support of a fact be uncontradicted, but does require that the fact's existence be highly probable.

Lanfear v. Ruggerio, 2020 VT 84, ¶ 18, 213 Vt. 322 (quotations and citation omitted); see State v. Lontine, 2016 VT 26, ¶ 46, 201 Vt. 637, (explaining standard "the clear-and-convincing-evidence standard should operate as a fundamental caution upon the minds of all judges, barring such orders unless the evidence results in a firm conviction as to the truth of the allegations to be established") overruled on other grounds by State v. Downing, 2020 VT 101 213 Vt. 468. As noted in Shores, the legislative history of Chapter II, § 40(2) and § 7553a indicated a concern for releasing individuals on bail where the "likelihood of further injury to society [was] extremely high." 2025 VT 62, ¶ 30 (quotation omitted). Accordingly, the State's proof must establish by that elevated standard that there exists a substantial threat of physical harm that cannot be addressed through any conditions of release. See 13 V.S.A. § 7553a(a); Vt. Const. ch II, § 40(2)

In this instance, the State has not presented clear and convincing evidence that the threat of physical violence against B.S. is substantial and that conditions will not suffice to protect B.S. from defendant. On the one hand, the evidence shows that defendant violated a civil restraining order by coming to B.S.'s home two times with a gun and knife, violated that same order by not surrendering his firearms to law enforcement, has sometimes expressed anger towards B.S., and has sworn at her. He acted erratically during the two months prior to entering custody, appeared suicidal at times, and B.S. is fearful of how he might act in his present state. Defendant has no stable residence and, thus far, has not proffered a responsible adult to oversee his adherence to any release conditions.

On the other hand, defendant made no physical contact with B.S. during the two trips to her home at issue here; made no physical threats to B.S.; and did not display or even note the weapons, which remained at all times within the purloined dump truck. B.S. stated that he was non-confrontational during the encounter, and she was able to check her car for defendant's mail while he was there without incident. The State did not present evidence of a history of physical threats or violence between B.S. and defendant at any time in the past, nor did it point to any physically threatening statements by him toward her. Further, during the second trip to the home on June 2, 2026, B.S. was not present, and the State did not offer clear and convincing evidence that he damaged any of B.S.'s property. B.S. testified that defendant stole nothing and, in her view, was desperately trying to find his missing mail and credit cards when he came to her home.

Defendant has no criminal record or convictions for failing to follow conditions of release issued in a criminal case in open court. Nor has defendant purposely failed to appear for any criminal proceedings. The State has presented no evidence as to any misconduct, or assaultive or threatening behavior by defendant since he came into custody over a month ago and has not

presented evidence that defendant has been cited for any disciplinary violations in the jail. Cf. State v. Galanes, No. 2009-210, 2009 WL 2480128, at *3 n.3 (Vt. July 23, 2009) (unpub. mem.), https://www.vtcourts.gov/sites/default/files/documents/eo09-210.bail.pdf (noting HWOB order was supported by proof of "behavior defendant ha[d] exhibited while in custody" on the charge, which included "assaulting his cellmate").

Given those circumstances, the Court is not convinced to the heightened degree applicable here that defendant's risk of harm towards B.S. cannot be managed effectively by conditions of release. The State's evidence , though concerning, is not in keeping with the factual circumstances this Court has found compelling enough to warrant holding defendants without bail in the past. See, e.g., State v. Hosten, No. 26-AP-008, 2026 WL 253322, at *7-9 (Vt. Jan. 30, 2026) (unpub. mem.) https://www.vtcourts.gov/sites/default/files/documents/eo26-008.bail_.pdf (noting defendant had "willfully caused serious bodily injury to the complainant by strangling her" and had repeatedly engaged in such conduct over the course of their relationship," and that defendant "demonstrated a lack of respect both for the law and for specific conditions imposed on him" through criminal history which included "convictions for violating conditions of release" and "resisting a lawful arrest" (quotation omitted)); State v. Steuerwald, 2012 VT 98, ¶¶ 13, 16, 193 Vt. 663 (explaining "[d]efendant's act of strangling complainant was violent in the extreme," and "defendant was so determined to hurt complainant, nothing was going to stop defendant except police force," and reasoning "[d]efendant [could not] be relied upon to abide by no-alcohol conditions of release and [did] not obey court orders").

Although the Court shares the State's apprehension regarding defendant's potential disregard of conditions of release in light of his recent mental health concerns, the State has not persuaded the Court of that likelihood by clear and convincing evidence.

Pursuant to Vermont Rule of Appellate Procedure 9(b)(1)(F) and since some of the potential conditions require additional judicial inquiry, the matter will be remanded to the trial court for a prompt hearing and imposition of conditions of release. While it will be up to the trial court to fashion such conditions, the Court believes conditions that might be considered would include:

> A condition that defendant appear for court hearings unless excused.
>
> A condition that defendant inform defense counsel and the court of any changes in his address or phone number.
>
> A condition prohibiting defendant from purchasing or possessing any dangerous or deadly weapons.
>
> A condition prohibiting defendant from purchasing, possessing, or consuming any alcoholic beverages. If unable to do so, a condition requiring participation in an alcohol treatment program.
>
> A condition requiring that defendant have no contact with B.S.
>
> A condition that defendant stay 300 feet away from B.S., her residence, place of employment, and vehicle.

A condition that defendant not enter the Town of Underhill.

A condition that defendant participate in a mental health evaluation and follow any recommended course of treatment.

A condition that defendant be subject to a curfew from 7:00 p.m. to 7:00 a.m. at a designated residence or shelter.

A condition that defendant be released to a responsible custodian.[6]

A condition that defendant be subject to immediate arrest for violating any of the protective conditions of release.

Given the importance of having strong conditions of release in place to mitigate the risks presented in this case, the hold without bail order will be vacated only upon the trial court's issuance of such conditions of release.

Reversed and remanded.

FOR THE COURT:

_____
Timothy B. Tomasi, Superior Judge,
Specially Assigned

---

[6] While the defense did not proffer such an individual at hearing, the trial court is not precluded from inquiring as to whether such an individual has been located in the interim. The Court's determination on appeal, however, does not depend on the availability of a custodian.